Nicholas L. GIURICICH and Bodo Kalen, Individually, Plaintiffs Below, Appellants,

v.

EMTROL CORPORATION, a Delaware Corporation, Robert G. Fournie, Earle J. Kennedy, Jr., Kenneth B. Hardy, Jr., Robert G. Fournie, Jr., and Earle J. Kennedy, III, Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted: April 21, 1982.

Decided: July 30, 1982.

---

William Prickett, John H. Small of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for plaintiffs below, appellants; Kenneth A. Lapatine of Carro, Spanbock, Londin, Fass & Geller, New York City, and Michael L. Hirschfeld (argued) of Seyfarth, Shaw, Fairweather & Geraldson, New York City, of counsel.

David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants below, appellees; Lewis R. Mills (argued) of Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., of counsel.

Before HERRMANN, C. J., McNEILLY, QUILLEN, HORSEY and MOORE, JJ., constituting the Court en banc.

HERRMANN, Chief Justice.

The plaintiffs appeal the denial by the Court of Chancery of their petition for the appointment of a custodian pursuant to 8 Del.C. § 226(a)(1),[1] despite the existence of a shareholder deadlock between the plaintiffs, who own 50% of the stock of defendant Emtrol Corporation (hereinafter "Emtrol"), and Continental Boilerworks, Inc., (hereinafter "Continental"), which controls the remaining 50% of the stock. This deadlock has prevented the election of successor directors indefinitely. This is a case of first impression in this Court.

---

1. 8 Del.C. § 226(a)(1) provides:

"(a) The Court of Chancery, upon application of any stockholder, may appoint 1 or more persons to be custodians, and, if the corporation is insolvent, to be receivers, of and for any corporation when:

(1) At any meeting held for the election of directors the stockholders are so divided that they have failed to elect successors to directors whose terms have expired or would have expired upon qualification of their successors; or ..."

## I.

Plaintiffs are officers and directors of defendant Emtrol who, along with Continental, founded Emtrol which designs, produces and sells industrial air pollution equipment. Defendants are Emtrol and the remaining directors of Emtrol who are all affiliated with Continental as officers, directors, employees, or shareholders.

In order to start up the new corporate entity, plaintiffs agreed to supply technical expertise and Continental agreed to supply the necessary capital. As part of this agreement, in part to protect its investment and also for tax purposes, Continental received 80% of the shares of the fledgling corporation and plaintiffs received the remaining 20%. Plaintiffs, however, were each given an option to acquire an additional 15% of the stock of the corporation, which could be exercised in the first fiscal year that the corporation showed a profit. Pursuant to the agreement, Continental was given control of Emtrol's board of directors [2] to reflect its superior ownership of the shares. No express agreement, however, was made concerning restructuring the board in the event that plaintiffs exercised their option.

In the first fiscal year that Emtrol became profitable, plaintiffs exercised their individual options and together own 50% of the shares of Emtrol. Shortly thereafter, they demanded that the board of directors be restructured to reflect their proportional interest; their demand was flatly refused by the existing board. Despite the parity of interest of plaintiffs and Continental in the enterprise, Continental has retained control of the board of directors and has persisted in its refusal to restructure the board.

**2.** Thus, three of the five original members of Emtrol's initial board of directors were affiliated with Continental.

**3.** Section 226(a)(2) provides as follows:
"(a) The Court of Chancery upon application of any stockholder, may appoint 1 or more persons to be custodians ... of and for any corporation when:

\* \* \*

Since plaintiffs exercised their options, numerous disputes have arisen between plaintiffs and Continental over such serious things as equal board representations, control and disbursement of corporate funds, corporate dividends, officers compensation, and bonuses. Apparently to guarantee their continued control of Emtrol, the majority of the existing board of directors, in 1979, passed a resolution to amend the by-laws to expand the board from five members to seven members. The majority directors proceeded to appoint two relatives of Continental representatives to fill the new directorships, thus further diluting the plaintiffs' position on the board to a 5–2 status.

On April 8, 1981, plaintiff Kalen, as president of Emtrol called a special shareholder meeting for the purpose of electing successor directors. At this meeting, no director candidate received more than 50% of the voting shares. The parties concede that the shareholders are deadlocked indefinitely, thus unable to elect successor directors and thus perpetuating the control of the present directors.

## II.

The Trial Court based its decision in large part upon 8 *Del.C.* § 226(a)(2),[3] which authorizes the appointment of a custodian in situations involving a division of corporate directors—not a deadlock of stockholders, as here. Appointment of a custodian was refused by the Trial Judge on the ground that, despite the existence of a shareholder deadlock preventing the election of successor directors, "there has been no injury to any vital interests of plaintiffs as stockholders, nor has Emtrol suffered any apparent injury."

(2) The business of the corporation is suffering or is threatened with irreparable injury because the directors are so divided respecting the management of the affairs of the corporation that the required vote for action by the board of directors cannot be obtained and the stockholders are unable to terminate this division; ..."

The plaintiffs argue that § 226(a)(1), not § 226(a)(2), governs; that the language of § 226(a)(1) is clear and unambiguous and does not include any requirement of irreparable injury or harm as prerequisite to the appointment of a custodian. Thus, they contend that it was error for the Trial Court to apply the standard of § 226(a)(2) in denying the petition for appointment of a custodian under § 226(a)(1) in this case. The plaintiffs assert that they have made the essential prerequisite showing of a shareholder deadlock, in addition to other irreconcilable differences, to justify appointment of a custodian under the provisions of § 226(a)(1).

The defendants, on the other hand, contend that the decision whether to appoint a custodian rests in the sound discretion of the Trial Judge, and because the appointment of a custodian to take over the control of a solvent corporation is a drastic remedy, this remedy should be granted only with great caution and restraint. Consequently, the defendants' argument goes, the Trial Court properly denied the petition of the plaintiffs because they are the managing officers of Emtrol and members of the board; there has been no showing of self-dealing or overreaching by the defendant directors; and since Emtrol is a solvent and prosperous concern, the plaintiffs, as stockholders, benefit from that prosperity.

The Trial Court, and the defendants here, relied upon prior Delaware cases decided upon general equitable principles prior to the enactment of the original § 226 in 1949,[4] the first such statute on shareholder deadlocks; or under § 226 prior to its amendment in 1967;[5] or under § 226(a)(2) which, as has been noted, deals with the appointment of a custodian in the event of a director, not a stockholder, deadlock.[6]

Such cases are neither governing nor persuasive in this case dealing with the 1967 amendment of § 226.

### III.

The 1949 forerunner of § 226 provided:

Whenever, by reason of an equally divided vote of the stockholders, there shall be a failure to elect directors, and such failure for such reason shall exist at two successive annual elections, or if there shall be a failure to elect directors by reason of an equally divided vote at an election held in accordance with section 224 of this title, the Court of Chancery, on application of any stockholder, may appoint one or more persons to be *receivers* of and for such corporation, *with all the powers and title of a receiver appointed under section 291 of this title and, in addition thereto, the power to continue the corporate business until otherwise ordered by the Court.* 8 *Del.C.,* 1953, § 226. (Emphasis supplied)[7]

The 1949 Statute thus provided for the appointment of a "receiver" with the full powers of a receiver in an insolvency situation under § 291. With such broad powers, the appointment of a "receiver" for a sol-

---

**4.** *Drob v. National Memorial Park, Inc.,* Del. Ch., 41 A.2d 589 (1945); *Lichens v. Standard Commercial Tobacco Co., Inc.,* Del.Ch., 40 A.2d 447 (1944); *Salnita Corp. v. Walter Holding Corp.,* Del.Ch., 168 A. 74 (1933); *Thoroughgood v. Georgetown Water Co.,* Del.Ch., 77 A. 720 (1910).

**5.** *Hall v. John S. Isaacs & Sons Farms, Inc.,* Del.Ch., 146 A.2d 602 (1958) *modified* 163 A.2d 288 (1960); *Paulman v. Kritzer Radiant Coils Inc.,* Del.Ch., 143 A.2d 272 (1958).

**6.** *Barry v. Fullmold Processes, Inc.,* Del.Ch., No. 4740 (June 16, 1975). *Wilderman v. Wilderman,* Del.Ch., 315 A.2d 610 (1974).

**7.** 8 *Del.C.* 1953, § 291, provided:

Whenever a corporation shall be insolvent, the Court of Chancery on the application and for the benefit of any creditor or stockholder thereof, may, at any time appoint one or more persons to be receivers of and for the corporation, to take charge of the estate, effects, business and affairs thereof, and to collect the outstanding debts, claims, and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation or otherwise all claims or suits, to appoint an agent or agents under them, and to do all other acts which might be done by the corporation and may be necessary and proper. The powers of the receivers are to be such and continued so long as the court shall think necessary. The provisions of this section shall not apply to corporations for public improvement.

vent corporation was a "drastic" remedy indeed.[8]

The Delaware Corporation Law was extensively revised in 1967, including the enactment of the present § 226. 56 *Del.l.Ch.,* 50, § 226. *See* Folk, the Delaware Corporation Law: A Commentary and Analysis, § 226, p. 271 (1972). One of the important changes accomplished was that, under the new Statute, the Court of Chancery was authorized to appoint a "custodian" instead of a "receiver".[9] This was more than a mere change of semantics.[10] The clear change in terminology was accompanied by a limitation on the powers of the appointee. A "receiver" appointed under the predecessor to the current § 226(a) was given "all the powers" of a receiver appointed for an insolvent corporation, in addition to the "power to continue the corporate business until otherwise ordered by the Court." A "custodian" appointed under the present § 226 has the "standby" powers of a receiver, but the Statute specifies that "the authority of the custodian is to continue the business of the corporation and not to liquidate its affairs and distribute its assets except when the court shall otherwise order ..." 8 *Del.C.* § 226(b).[11]

■ Thus, the powers of a custodian are not as unlimited as the powers of a receiver appointed under the general equitable powers of the court, or under the forerunner to the present § 226(a)(1). "When a legislative body ... amends its prior enactment by a material change of language, the rule of statutory construction presumes that a change in meaning was intended." *Daniel D. Rappa, Inc. v. Englehardt,* Del.Supr., 256 A.2d 744, 746 (1969); accord *Chrysler Corporation v. State of Delaware,* Del.Supr., 163 A.2d 239 (1960).

■ It is for these reasons that we conclude that cases construing the power of the Court of Chancery to appoint a receiver under general principles of equity or former statutes are not dispositive of the scope and effect of the present § 226(a)(1) which has

---

**8.** As noted by Professor Folk, in discussing the appointment of a provisional director for a close corporation under 10 *Del.C.* § 353(b):

"Section 353(b) specifically authorizes the Court in Chancery, in lieu of appointing a custodian, to utilize the new Delaware provision for designating a provisional director. This is a less drastic step than placing the corporate affairs and assets in the hands of a custodian, even though a custodian, unlike a receiver, only runs the business and does not undertake to dissolve and distribute the assets." Folk, § 352 p. 522.

**9.** Other changes in the revision include the elimination of the requirement that the stockholders be "equally divided". Now relief can be granted if the stockholders are "so divided" that they have failed to elect successors to directors whose terms have expired. In addition, the legislature eliminated the requirement that the deadlock "exist at two successive elections".

**10.** In addition to the revision of § 226 the power of the court to remedy intracorporate deadlocks was also enhanced by the extensive revisions of the corporate code in 1967 which included the addition of 8 *Del.C.* § 273 (dissolution of corporation having two shareholders); 8 *Del.C.* § 352 (appointment of a custodian for a close corporation); and 8 *Del.C.* § 353 (appointment of a provisional director for a close corporation).

**11.** 8 *Del.C.* § 226(b) provides:

A custodian appointed under this section shall have all the powers and title of a receiver appointed under § 291 of this title, but the authority of the custodian is to continue the business of the corporation and not to liquidate its affairs and distribute its assets, except when the Court shall otherwise order and except in cases arising under subparagraph (a)(3) of this section or § 352(a)(2) of this title.

8 *Del.C.* § 291, which is referred to in § 226(b) provides:

Whenever a corporation shall be insolvent, the Court of Chancery, on the application of any creditor or stockholder thereof, may, at any time, appoint 1 or more persons to be receivers of and for the corporation, to take charge of its assets, estate, effects, business and affairs, and to collect the outstanding debts, claims, and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation or otherwise, all claims or suits, to appoint an agent or agents under them, and to do all other acts which might be done by the corporation and which may be necessary or proper. The powers of the receivers shall be such and shall continue so long as the Court shall deem necessary.

created the new "custodian" remedy in shareholder deadlock situations.[12]

### IV.

■ Cases dealing with the "director" deadlock provisions of § 226(a)(2) are equally inapposite. *See Barry v. Full Mold Processes, Inc., supra; Wilderman v. Wilderman, supra.* Unlike the shareholder-deadlock provisions of § 226(a)(1), the director-deadlock provisions of § 226(a)(2) expressly require a showing of "irreparable injury" as a prerequisite to obtaining relief. Section 226(a)(1) contains no such standard, express or implied. We may not assume that the omission was the result of an oversight on the part of the General Assembly. "The legislative body is presumed to have inserted every provision for some useful purpose and construction, and when different terms are used in various parts of a statute it is reasonable to assume that a distinction between the terms was intended." *C & T Associates v. Government of New Castle*, Del.Ch., 408 A.2d 27, 29 (1979). Similarly, where a provision is expressly included in one section of a statute, but is omitted from another, it is reasonable to assume that the Legislature was aware of the omission and intended it. The courts may not engraft upon a statute language which has been clearly excluded therefrom by the Legislature. *See Wilmington Trust Co. v. Barry*, Del.Super., 338 A.2d 575, 578 (1975), *aff'd.* 359 A.2d 664 (1976).

■ Accordingly, we conclude that the provision of § 226(a)(2) requiring a showing of "irreparable injury", as a prerequisite to relief in a director-deadlock situation, is inapplicable to a petition under § 226(a)(1) in a stockholder-deadlock situation.

### V.

■ It is fundamental that the Courts ascertain and give effect to the intent of the General Assembly as clearly expressed in the language of a statute. *A & P Stores v. Hannigan*, Del.Supr., 367 A.2d 641 (1976); *Keys v. State*, Del.Supr., 337 A.2d 18 (1975). There is judicial discretion to construe a statute when its language is obscure and ambiguous, *Balma v. Tidewater Oil Co.*, Del.Supr., 214 A.2d 560 (1965); but when no ambiguity exists, and the intent is clear from the language of the statute, there is no room for statutory interpretation or construction.

The language of § 226(a)(1) is clear and unambiguous. A custodian may be appointed by the Court of Chancery when "[a]t any meeting held for the election of directors the stockholders are so divided that they have failed to elect successors to directors whose terms have expired or would have expired upon qualification of their successors . . ." The language of § 226(a)(1) contains no other condition or exception, express or implied. Specifically, § 226(a)(1) requires no additional showing such as irreparable harm to the stockholder or the corporation. It is impermissible judicial legislation to engraft any such prerequisite upon § 226(a)(1).

■ Moreover, the evolution of § 226(a)(1) clearly indicates a legislative intent to the contrary. As has been noted, the broad 1967 revisions of the Delaware Corporation Law included the present § 226(a), authorizing the appointment of a custodian instead of a receiver in stockholder-deadlock situations, together with the deletion of the requirement that the shareholder-deadlock continue for two annual elections before relief could be granted. Manifestly, the General Assembly intended to create a more liberal and readily available remedy in shareholder-deadlock situations. It is evident that the intent of the Legislature was to ease the onerous burden of proof under the prior case law which

---

**12.** One respected authority has made the following comments with respect to Delaware's legislative scheme developed to remedy corporate deadlocks:

"Several states including Delaware and Pennsylvania provide for the appointment of a custodian in deadlock situations. The power of a custodian seems to be intermediate between those of a provisional director and a receiver."

16 Fletchers Cyclopedia of the Law of Corporations § 7713, p. 153 (perm. ed. 1979).

made the appointment of a receiver for a solvent corporation almost hopeless, despite a potentially permanent shareholder-deadlock.[13] By § 226(a)(1), the Legislature has created a viable remedy for the injustices arising from a shareholder-deadlock which permits control of a corporation to remain indefinitely in the hands of a self-perpetuating board of directors, any gross unfairness to other major stockholders notwithstanding.

## VI.

■ This view of § 226(a)(1) is consistent with time-honored principles of corporate democracy. "As a general rule the right to vote shares of corporate stock having voting powers at stockholders' meetings is an incident of their legal and record ownership." *Tracy v. Brentwood Village Corp.*, Del.Ch., 59 A.2d 708, 709 (1948); *accord, Norton v. Digital Applications, Inc.*, Del.Ch., 305 A.2d 656 (1973). While the right to vote one's shares for the election of directors is not an unrestricted or inalienable right, 8 *Del.C.* § 151(a); *Providence and Worchester Co. v. Baker*, Del.Supr., 378 A.2d 121 (1977), the right generally exists unless otherwise provided by the certificate of incorporation.[14]

■ The Courts of this State will not allow the wrongful subversion of corporate democracy by manipulation of the corporate machinery or by machinations under the cloak of Delaware law. *Schnell v. Chris-Craft Industries*, Del.Supr., 285 A.2d 437 (1971). Accordingly, careful judicial scrutiny will be given a situation in which the right to vote for the election of successor directors has been effectively frustrated and denied by the willful perpetuation of a shareholder-deadlock and the resulting entrenched board of directors. The situation in this case does not withstand such scrutiny: It has been admitted by counsel for the defendants that their primary purpose in perpetuating their control of the board of directors is to give the defendants the governing hand in forthcoming executive compensation contract negotiations with their 50–50 partners, the plaintiffs. This is an unworthy purpose, creating a situation violative of corporate democracy. Compare *S. A. Judah v. Delaware Trust Co.*, Del.Supr., 378 A.2d 624 (1977).

## VII.

The defendants contend that the scope of review is whether the Trial Court abused its discretion.

> "Unless otherwise provided in the certificate of incorporation and subject to the provisions of § 213 of this title, each stockholder shall be entitled to one vote for each share of capital stock held by such stockholder." 8 *Del.C.* § 212.

A previous version of this Statute provided that a shareholder was entitled to one vote for each share "[u]nless otherwise provided in the charter, certificate or *by-laws* of the Corporation." 22 *Del.L.* Ch. 166, § 17 (1901) (emphasis added). *See also Standard Scale & Supply Co. v. Chappel*, Del.Supr., 141 A. 191 (1928); Folk, supra, § 212, p. 209. Significantly, a stockholder may no longer be deprived of his voting rights by a mere change in the bylaws. Further evidence of the importance placed upon shareholder suffrage is found at 8 *Del.C.* § 211(c): If there is a failure to hold a stockholder's meeting for the election of directors within 30 days of the date designated for the meeting, or if no meeting is held within 13 months of the last annual meeting, the Court of Chancery "may summarily order a meeting to be held upon the application of any stockholder."

---

**13.** A Legislature is presumed to be aware of existing law. *Husband v. Wife*, Del.Supr., 367 A.2d 636 (1976). At the time § 226(a)(1) was amended, the existing case law did not allow appointment of a receiver unless the petitioner could show irreparable harm, or in other words, imminent corporate paralysis. For example, in *Paulman v. Kritzer*, Del.Ch., 143 A.2d 272 (1958), a shareholder deadlock had existed during four successive annual meetings between two factions, each holding one-half of the shares of the corporation. The Court conceded that the deadlock could continue indefinitely. But despite this conclusion, and the refusal of the defendant to allow plaintiffs representation on the board, their one-half ownership of the corporation, notwithstanding, the Court held that those facts were insufficient to justify the appointment of a receiver under then-existing standards.

**14.** The right is not limited by the certificate of incorporation in this case. See also 5 Fletcher's Cyclopedia on the Law of Corporations, § 2025 (1976). The Delaware Law specifically provides in pertinent part:

■ Section 226(a) provides that upon the application of any stockholder the Court of Chancery "may" appoint a custodian upon the circumstances therein stated. While the appointment of a custodian is discretionary under § 226(a)(1) it does not follow that the Trial Court may overlook the clear legislative mandate of the Statute or apply an incorrect legal standard. To do so is to abuse discretion. *Pitts v. White*, Del.Supr., 109 A.2d 786, 788 (1954).

The plaintiffs have made an undisputed showing of utter disagreement between the two 50% stockholder factions on a number of serious issues. There is no indication that this shareholder-deadlock will be resolved in the foreseeable future, absent judicial intervention. Indeed, the Trial Court found that "the defendants appear to be assured of perpetual control."

■ Accordingly, we hold that it was an abuse of discretion and error of law for the Trial Judge to deny the petition for the appointment of a custodian under § 226(a)(1), despite a conceded shareholder-deadlock of indefinite duration which would, in effect, leave the existing directors in perpetual control of the corporate entity, and would relegate the one-half owners of the corporation to a perpetual minority status without remedy or recourse. Such result was not intended under § 226(a)(1) and should not be permitted here.

## VIII.

■ We hold, however, that the powers of the custodian to be appointed in this case shall be sharply limited.

Section 226(b) states that a custodian shall have

"all the powers and title of a receiver appointed under § 291 of this title, but the authority of the custodian is to continue the business of the corporation and not to liquidate its affairs and distribute its assets, except when the Court shall otherwise order. . . ."

We interpret this section as setting forth the maximum statutory limits on the powers of the custodian. Section 291, to which § 226(b) specifically refers, states: "The powers of the [receiver] shall be such and shall continue so long as the Court shall deem necessary." Thus, under §§ 226 and 291, the Court of Chancery may determine the duration of the appointment and the specific powers to be conferred upon the custodian. The involvement of the Court of Chancery and its custodian in the corporation's business and affairs should be kept to a minimum and should be exercised only insofar as the goals of fairness and justice, as stated herein, require.

Accordingly, we reverse and remand with the following directions:

A custodian will be appointed by the Court of Chancery under § 226(a)(1) who is strictly impartial [15] and has a proven business and executive background. The custodian will be empowered to act only in situations in which the board of directors of Emtrol have failed to reach a unanimous decision on any issue properly before them. In the event that the board is unable to reach unanimous accord on any such pending issue, the custodian will resolve the issue in such manner as he shall deem appropriate. His decision and action in such case shall be binding upon the officers and directors of Emtrol, and shall be deemed the official action of the corporation. The custodian may call a directors' meeting, or a stockholders' meeting, *sua sponte* or at the request of any director. The custodian shall serve for such time as the Court of Chancery shall deem necessary, or until there is a unanimous request to the Court for his discharge by all shareholders of Emtrol. The compensation of the custodian will be approved by the Court of Chancery and paid by Emtrol.

\*   \*   \*

Reversed and remanded for appointment of a custodian in accordance with this opinion.

15. He should not be a stockholder or creditor of the corporation or of any subsidiary or affili-   ate of the corporation.