**Lily H. BENTAS, Byron Haseotes and Cumberland Farms, Inc., Plaintiffs,**

v.

**Demetrios B. HASEOTES and George Haseotes, Defendants.**

**C.A. No. 17223.**

Court of Chancery of Delaware, New Castle County.

Submitted: Feb. 10, 2000.

Decided: March 6, 2000.

Revised: March 9, 2000.

Jesse A. Finkelstein, Catherine G. Dearlove and Janine M. Salomone, of Richards, Layton & Finger, P.A., Wilmington, Delaware; for Plaintiffs.

Judith Nichols Renzulli, of Duane, Morris & Heckscher LLP, Wilmington, Delaware; and Robert J. Valihura, Jr., of Robert J. Valihura, Jr., P.A., Wilmington, Delaware; and William F. Griffin, Jr., of Davis Malm & D'Agostine P.C., Boston, Massachusetts; for Defendants.

### OPINION

JACOBS, Vice Chancellor.

Pending is the plaintiffs' renewed motion for appointment of a custodian for Cumberland Farms, Inc. ("the Company") under 8 *Del. C.* § 226(a)(1). The principal issues are (i) whether that statute empow-

ers this Court to appoint a custodian for a Delaware corporation where the shareholders are deadlocked on the election of some, but not all, of the directors, and (ii) what should be the role of a court-appointed custodian in these circumstances. I conclude that the Court is so empowered, and that the facts of this case warrant the appointment of a custodian charged with carrying out the duties hereinafter described.

## I. BACKGROUND

### A. *Procedural History*

At an earlier stage of this proceeding the defendants moved to dismiss the complaint. The plaintiffs responded by moving for partial summary judgment on their claim for the appointment of a custodian by reason of a shareholder deadlock. This Court issued an Opinion on November 5, 1999, (i) denying plaintiffs' motion for summary judgment (with leave to renew if appropriate), (ii) deferring decision on the defendants' motion to dismiss the complaint, and (iii) directing the parties to conduct a stockholders meeting to elect directors.[1] What prompted that disposition of the motions was the expectation that a court-ordered election of directors might break the deadlock and moot this action.

Unfortunately, that was not to be. A stockholders meeting was held on November 15, 1999, but resulted in the re-election of only two of the four family directors, who are the plaintiffs in this case. The other two directors, who are the defendants, did not receive sufficient votes to be reelected and as a consequence, they continue in office as holdover directors.

That state of affairs prompted the plaintiffs to renew their motion for the appointment of a custodian. The basis for the motion is that the November 15, 1999 shareholders meeting conclusively established a cognizable shareholder deadlock regarding the election of directors. The defendants oppose the motion and have moved to dismiss the amended complaint. This is the Opinion of the Court, after oral argument and supplemental briefing, on both motions. For the reasons next discussed, the plaintiffs' motion for appointment of a custodian will be granted, and the defendants' motion to dismiss will be denied.

### B. *Background Facts*

Many of the background facts are set forth in this Court's earlier Opinion, and will not be repeated here, except as needed to elucidate the issues being decided.

The Company, Cumberland Farms, is a Delaware corporation engaged in the retail convenience store and gas station business in New England, the mid-Atlantic states, and Florida. The plaintiffs Lily Bentas ("Lily") and Byron Haseotes ("Byron"), and the defendants Demetrios B. Haseotes ("Demetrios") and George Haseotes ("George"), are siblings who each own 25% of the Company's Class A (voting) stock.[2] Each sibling is also one of the Company's four directors.

---

1. *Bentas v. Haseotes*, Del. Ch., C.A. No. 17223, 1999 WL 1022112, Jacobs, V.C. (Nov. 5, 1999). The Opinion granted plaintiffs leave to file an amended complaint seeking an order under 8 *Del. C.* § 211 for a court-ordered election of directors. Shortly thereafter, a second amended complaint was filed and a stockholders meeting was held.

2. In addition to the 8 shares of Class A (voting) stock, there are 200,000 shares of Class B (nonvoting) stock of the Company. Byron, Demetrios, and George each own 25% of the Class B stock. Lily owns 6.25% of that stock, as do three other Haseotes sisters who are not parties to this action.

The Company's board has historically been controlled by the four "family directors"—Lily, Byron, Demetrios, and George. Lily is CEO and Chairman of the Board, having been installed in those positions as a result of a bankruptcy reorganization of the Company. As part of that reorganization, the Bankruptcy Court appointed five representatives of the Company's unsecured creditors to the board. The terms of those five additional directors expired at the end of 1998 when Cumberland Farms paid off its unsecured debt and successfully concluded its plan of reorganization. At that time the board membership reverted to the four family directors who had been serving in those positions for over thirty years. From and after 1998 the siblings—and as a consequence the Cumberland Farms board—became and have continued to be divided.[3]

At the 1998 annual stockholders meeting, Lily and Byron nominated a slate of directors that included (in addition to the four family directors) the five "Independent Directors" who at that time were still serving under the reorganization plan. Although Demetrios and George were willing to elect the four family directors, they would not support an arrangement that extended the limited terms of the five Independent Directors. They therefore voted against the proposed nine director slate. As a result, neither slate received the requisite number of votes, no directors were elected at the 1998 meeting, and the nine incumbent directors continued in of-

fice until the five Independent Directors departed the board.

The 1999 annual stockholders meeting was scheduled for May 5, 1999, but it never took place because Demetrios and George informed the plaintiffs that they would not be attending. Because their absence would defeat a quorum, the 1999 meeting was canceled and the four family directors continued in office as holdover directors. The impasse among the siblings led to the filing of this action and to this Court's November 1999 Opinion and Order directing that a stockholders meeting to elect directors be held.

That court-ordered meeting took place on November 15, 1999. At that meeting the four family directors unanimously elected Lily and Byron to the board of Cumberland Farms. The remaining nominees—two of whom were non-stockholders and non-family members nominated by Lily and Byron, and two of whom were Demetrios and George (who were nominated by themselves)—did not receive the requisite number of votes to be elected.[4] Accordingly, Lily and Byron presently serve as the *de jure* directors of the Company, while Demetrios and George serve as holdover directors, as they have been for the past three years.

This latest development led the plaintiffs to file their renewed motion for appointment of a custodian on the basis of a shareholder deadlock.

3. The division between the two sets of siblings, which currently involves whether the board should be expanded beyond the present four person membership, has not affected the economic well being of the Company. Both sides agree that Cumberland Farms is solvent and profitable.

4. Under the Company's Certificate of Incorporation, all actions requiring a shareholder vote, including the election of directors, must be taken by the affirmative vote of a majority of the Class A shares. Thus, the election of directors required the affirmative vote of at least five (5) of the eight (8) outstanding Class A shares. At the November 15, 1999 meeting, Lily and Byron received the votes of all eight (8) shares, but the remaining nominees (including Demetrios and George) received only four (4) votes.

## II.  ANALYSIS

### A.  *The Contentions and The Issues*

Under 8 *Del. C.* § 226(a)(1), this Court may appoint a custodian for a Delaware corporation when "[a]t any meeting held for the election of directors the stockholders are so divided that they have failed to elect successors to directors whose terms of office have expired or would have expired upon qualification of their successors...." The plaintiffs contend that that is what occurred at the November 15, 1999 court-ordered meeting. They argue that the results of that meeting establish their entitlement to relief as a matter of law, by conclusively showing that the shareholders were "so divided that they ... failed to elect successors" to two of the four directors "whose terms have expired."

The defendants disagree. They argue that § 226(a)(1) authorizes this Court to intervene only if there is a complete failure to elect *any* directors. Because successors to two of the Company's four directors were elected at the November 15, 1999 meeting, defendants urge that the plaintiffs have no cognizable claim for relief under § 226(a)(1). Therefore, defendants conclude, their motion to dismiss the complaint must be granted, and the plaintiffs' motion for summary judgment must be denied.

These contentions frame an issue of law, which is:  does § 226(a)(1) require a complete failure to elect any directors as the predicate for appointing a custodian, or is the failure to elect less than all of the directors sufficient to invoke that statute? Because the Court concludes that a failure to elect less than all of the directors is sufficient to empower the Court to grant custodianship relief, two additional questions arise. They are: (i) should a custodian be appointed in this case, and (ii) if so,

what role, should the custodian play? These issues are now addressed.

### B.  *Discussion*

#### 1.  *The Proper Construction Of the Applicable Statute*

On this threshold issue, the plaintiffs argue that the plain meaning of the statute authorizes the appointment of a custodian where the shareholders are "so divided that they have failed to elect successors to directors whose terms have expired...." That language (plaintiffs urge) means that the Court may appoint a custodian if there has been a failure to elect *some, but not all,* of the directors whose terms have expired. The defendants, however, read the statute to require that the stockholders must "have failed to elect *any* directors;" that is, defendants argue that the statute must be interpreted to require that *no directors* be elected before the Court can intervene. Having considered the parties respective positions, I conclude that the plaintiffs' interpretation of § 226(a)(1) is the correct one, and that the defendants' construction must be rejected. My reasons follow.

First, no language in the statute fairly lends itself to, let alone compels, the defendants' construction. Section 226(a)(1) does not, by its terms, require a failure to elect *any* directors as a result of a shareholder deadlock, as a precondition to the appointment of a custodian. What the statute does require is a failure, for that reason, to elect "directors whose terms have expired or would have expired upon qualification of their successors." That statutory language describes a smaller subset of the larger, all-inclusive, category (a failure to elect "any directors") that defendants claim is statutorily mandated before a custodian can be appointed. On that basis alone the defendants' argument fails.

Second, the resolution of this issue does not rest solely upon an analysis of the statutory language. Although the Court concludes otherwise, it acknowledges that it could be argued that the statute is ambiguous. Assuming *arguendo* that the statute is ambiguous, the ultimate conclusion remains the same, because the plaintiffs' statutory construction is validated by the statutory history, by the statutory governance scheme of which § 226(a)(1) is a part, and by the public policy which underlies that statutory scheme.

The statutory history of § 226(a)(1) is instructive. Before the 1967 amendments to the Delaware General Corporation Law, that Section read as follows:

> Whenever, by reason of an equally divided vote of the stockholders, there shall be a failure to elect directors, and such failure for such reason shall exist at two successive annual elections, or if there shall be a failure to elect directors by reason of an equally divided vote at an election held in accordance with Section 224 [now Section 211] of this title, the Court of Chancery, on application of any stockholder, may appoint one or more persons to be receivers of and for such corporation.... [5]

Thus, before 1967 the operative language required a "failure to elect directors." In 1967, however, that language was amended to provide a remedy for the "fail[ure] to elect successors to directors whose terms have expired." [6] Arguably, the pre–1967 statute could be read (as defendants contend) to require a failure to elect *any* directors as a precondition to custodianship relief. Even if that was the case, the 1967 amendment implicates the

principle that "when a legislative body ... amends its prior enactment by a material change of language, the rule of statutory construction presumes that a change in meaning was intended." [7] Clearly the 1967 change of language was "material," because that amended language (which is also contained in the current statute) now requires that the stockholders have "failed to elect successors to directors whose terms have expired." Because the post–1967 category of non-elected directors (failure to elect "successors to directors whose terms have expired") is less inclusive than the pre–1967 category (failure to elect "directors"), the present statute should not be interpreted to require that the stockholders must fail to elect *all* the directors who stood for election. Rather, § 226(a)(1) is more properly understood to authorize a remedy where the shareholders have failed, because of a deadlock, to elect less than all of the directors whose terms had expired. Specifically, and as explained more fully *infra*, the proper construction is that § 226(a)(1) empowers the Court to appoint a custodian where, because of a deadlock, the shareholders fail to elect a sufficient number of directors to constitute a quorum of the board.

That the plaintiffs' interpretation is the more reasonable construction is confirmed by an analysis of the governance scheme embodied in the Delaware General Corporation Law, as well as by the policy underlying that scheme. Section 141(a) requires that the business and affairs of the corporation shall be governed by the board of directors. Section 211 provides that the directors comprising the board shall be elected annually,[8] and that if there has

---

**5.** 8 *Del. C.* § 226 (1953).

**6.** 8 *Del. C.* § 226(a)(1) (1968).

**7.** *Giuricich v. Emtrol Corp.,* Del.Supr., 449 A.2d 232, 237 (1982) (citations omitted).

**8.** The only exception to that requirement is found in Section 141(b), which provides for a classified board of directors, and is not applicable here.

been no election for 13 months, the Court may order a meeting to be held. Finally, Section 226(a)(1) provides that if the stockholders' attempt to elect successor directors is ineffective, the Court may appoint a custodian as a remedy.

The important policy that is implicit, and underlies, these statutory provisions is that the business and affairs of a Delaware corporation must be governed by a board of directors whose members have stood for election, and who have actually been elected by the stockholders, on an *annual basis*.[9] Only in that way can the directors' continued accountability to shareholders, and the legitimacy of their decisions that bind the corporation's stockholders, be assured. As former Chancellor Allen has observed, the shareholder vote "... is critical to the theory that legitimates the exercise of power by some (directors and officers) over vast aggregations of property that they do not own."[10]

The plaintiffs' interpretation of § 226(a)(1) is the more reasonable, because it best furthers that statutory scheme and the policy that underlies it. Holdover directors are a "default" result, but under our statutory scheme of governance, that default arrangement cannot be a long term substitute for an effective annual election. If, as was the case here, an election is effective as to some but not all of the directors whose terms had expired, and the directors who are duly elected do not constitute a quorum of the board, effective board action by validly elected directors would be precluded

whenever the board is deadlocked. The defendants' interpretation of § 226(a)(1), which would deny the shareholders any remedy in those circumstances, is unreasonable because it would frustrate the statutory scheme. The more reasonable interpretation is one that would empower the Court to appoint a custodian who could (in cases where the custodian deems it appropriate) break a deadlock that would otherwise renders the board incapable of acting.

Third, and finally, the plaintiffs' interpretation more faithfully carries out the statute's purpose, which is to afford "... a viable remedy for the injustices arising from a shareholder-deadlock which permits control of the corporation to remain indefinitely in the hands of a self-perpetuating board of directors ..."[11] Where, as here, at least a quorum of the board has not been elected, the unelected directors can effectively exercise "negative control" over the board, and prevent any board action either by voting against proposals or by simply refusing to attend board meetings. To suppose that the General Assembly intended such a result is unreasonable.[12]

The flaw inherent in the defendants' interpretation is illustrated by the following example: assume that a corporation has ten directors, each of whom is favored by the party opposing custodianship. Assume also that at an election, the party seeking to change the board proposes a competing slate. Under the defendants' interpretation, the party opposing custodianship could simply vote for only one director

9. To reiterate, an exception to the requirement of the annual election of directors is found in 8 *Del. C.* § 141(b), which provides for a classified board of directors. *See* n. 8, *supra.*

10. *Blasius Indus., Inc. v. Atlas Corp.*, Del. Ch., 564 A.2d 651, 659 (1988).

11. *Giuricich,* 449 A.2d at 239.

12. *See E.I. duPont de Nemours & Co. v. Clark,* Del.Supr., 88 A.2d 436, 438 (1952) ("The Court must necessarily be guided by the presumption that the legislature did not intend an unreasonable, absurd, or unworkable result.")

proposed by the other party, and thereby ensure that a custodian would not be appointed and that nine of his favored directors will remain in office as "holdovers."

The defendants respond that the plaintiffs' proffered interpretation would lead to an equally absurd result. Citing as an example the same corporation that has ten directors, defendants posit that the stockholders validly elect nine directors but deadlock on the election of the tenth. In those circumstances, defendants argue, a quorum—indeed the vast majority—of the board will have been elected, yet a custodian would have to be appointed because of the failure to elect a single director.

The defendants' argument is flawed because it misconceives the plaintiffs' statutory interpretation. The plaintiffs argue that if the stockholders fail to elect successors to one or more directors, the statute would *permit* the Court to appoint a custodian, but would *not require* it to do so. Indeed, it is difficult to imagine a case where a court would exercise its power to appoint a custodian for a corporation, except where the stockholders, due to a deadlock, have failed to elect a sufficient number of directors to constitute at least a quorum of the full board. That is because where a quorum of directors has been validly elected, the statutory purpose—to prevent the perpetuation of control by unelected holdover directors—would not normally be implicated.[13]

The Court concludes, for these reasons that § 226(a)(1) must be interpreted to provide a custodianship remedy where, by reason of a deadlock, the shareholders are unable to elect successors to at least a quorum of the board. That conclusion raises two other issues, which are: should the Court exercise its discretion to appoint a custodian in these circumstances, and if so, what should the custodian's role be?

## 2. Whether the Court Should Intervene

The defendants argue that even if the statute is construed to empower the Court to appoint a custodian, the Court should nonetheless decline to grant relief or, alternatively, should permit defendants to take discovery to develop a complete record to demonstrate why the Court should exercise its discretion against appointing a custodian in this case.

The defendants' argument runs as follows: the intrusive custodianship remedy ought not to be granted, especially for an economically successful corporation like Cumberland Farms, unless the record clearly shows that it is necessary and there is no better alternative. Here, all four voting stockholders continue to serve on the Company's board, and each faction has an equal say in the direction of Cumberland Farms. Accordingly, these circumstances do not present a situation such as that involved in *Giuricich v. Emtrol,*[14]

13. Given that conclusion, one might well ask why the statute is worded to empower the Court to grant a custodianship remedy even in the odd case where (for example) a majority of the directors are duly elected and the stockholders are deadlocked (and therefore fail to elect) a small remaining board minority. To say it differently, why was § 226(a)(1) not drafted specifically to require that the shareholder deadlock result in a failure to elect at least a quorum of the board? The answer may be that the broader grant of authority was intended to capture the (likely rare) situation where, due to supermajority voting or similar requirements, the vote of even a quorum of newly elected directors would not be sufficient to constitute board action. *See,* Ernest L. Folk, III, *Review of the Delaware Corporation Law* (1968), at 342. In that situation a custodian would be warranted, even though a quorum of the board would have been duly elected.

14. 449 A.2d at 239–40.

where the plaintiffs represented 50% of the voting shares, yet were relegated to perpetual minority status because they were unable to elect 50% of the directors. Nor (defendants say) have the plaintiffs shown that the current *status quo* is causing any harm to the Company that warrants a judicial remedy. Rather, the defendants contend that the plaintiffs' true grievance is that they simply do not like having to deal with their siblings, and they therefore seek to use the custodianship to leverage themselves into a position of board control. That, defendants insist, is not a valid basis for this Court to intervene.

Although that argument has surface appeal, I conclude, upon closer analysis, that it is not persuasive because this case does implicate the purposes served by § 226(a)(1). Accordingly, no further showing of harm is required.

■■■ Although the current "standoff" does not leave either side in a "perpetual minority status," the defendants' argument overlooks the fact that the *status quo* implicates a related concern that § 226(a)(1) is designed to remedy, namely, a stockholder deadlock that would "... permi[t] control of the corporation to remain indefinitely in the hands of a self-perpetuating board of directors." [15] In this case, Demetrios and George have been "holdover" directors for the past three years. Although they are not *de jure* directors and do not constitute a majority of the board, they do have the power to exercise "negative control" over the Company. Because

there can be no quorum if they are absent from a board meeting, Demetrios and George could prevent the board from taking any action of which they do not approve, by simply refusing to attend duly-called directors meetings; and they could veto any action with which they do not agree by voting against it. The statute does not, by its terms, require any showing of specific harm for the Court to exercise its statutory power under § 226(a)(1), but if any showing were needed in addition to satisfying the statutory deadlock requirement, the power to exercise negative control is sufficient. [16] To the extent the statutory scheme creates a risk that a custodianship could unnecessarily intrude into the board's ability to manage the corporation's affairs, that risk is more properly addressed in defining what role the custodian should play, which is the final issue presented. [17]

### 3. *What Role the Custodian Should Play*

■■ The parties have fundamental disagreements about the role a court-appointed custodian should play in this specific case. I touch upon those disagreements, and resolve them where necessary in the discussion that follows.

*First,* the custodian shall be totally independent of either faction, with no previous relationship to either shareholder group or to the Company. The custodian's role shall also be consistent with, and limited to fulfilling the purpose of, a § 226(a)(1) custodianship, which is to assure that the

---

**15.** *Giuricich,* 449 A.2d at 239.

**16.** In so ruling, I necessarily conclude that no further discovery is needed on the issue of whether a custodian should be appointed.

**17.** As more fully explained, *infra,* the appointment of an independent custodian will not strip the defendants of any of their rights as

50% stockholders or as directors. Indeed, plaintiffs and defendants would both be affected by the appointment of a custodian, as that will prevent either faction from using their 50% voting power to block corporate action if, in the view of the independent custodian, such action is in the best interests of the Company and all its stockholders.

board functions properly where because of a deadlock the shareholders have failed to elect a quorum of directors. Specifically in this case, that means that the custodian shall be present, and cast a vote, at board meetings where the board would otherwise be incapable of acting, either because the directors are equally divided on a particular proposal,[18] or because the absence of directors threatens to defeat a quorum. The custodian's vote shall be guided solely by the custodian's good faith, informed judgment as to what decision would be best for the corporation and its stockholders collectively. In exercising that judgment, the custodian shall not be required to cast a tie-breaking vote on every issue where the board is equally divided; rather, the custodian shall intervene only in disputes that the custodian deems to be significant to managing the corporation's business and affairs.

*Second*, although all parties agree that the custodian should be empowered to cure the Company's "illness" rather than treat only the symptoms, the two sides dispute how the custodian should proceed. The defendants contend that the Court should direct the custodian to split the Company's assets by creating two corporations, each of which would be managed by one of the factions. The stock of one or both corporations would be distributed among the four voting stockholders, and the nonvoting stockholders would be entitled to elect whether they would join the plaintiffs' or the defendants' shareholder group. Alternatively, defendants argue that if a division of the Company is not possible, the custodian should cause the corporation to purchase the plaintiffs' interest in the Company. Finally, and failing either of the above described alternatives, the defendants propose that the custodian be directed and empowered to sell the Company to a third party, structured either as an asset or a stock sale.

The plaintiffs oppose this approach. They question whether the Court has the power to direct the custodian to employ one or more of those measures. They argue, moreover, that the defendants' approach would be highly intrusive and would run counter to the statutory policy, which is to allow the business of the Company to continue in the least invasive manner possible and without regard to the divisions between the stockholders. Therefore, plaintiffs conclude, the custodian must be directed to explore *all* options, including not only those advocated by de-

---

18. In this regard, the parties dispute whether the custodian should act when the board is equally divided (as defendants propose), or only when the board has not been able to reach unanimous consent on a given proposal. In my view, the defendants' position is the more reasonable, because if the board votes three-to-one on an issue, there is no deadlock and no need for the custodian to participate. A lack of unanimity is not a deadlock. In normal circumstances the vote of three of the four directors would be sufficient to carry the day on any measure, and no showing is made why that scheme should not prevail here. The plaintiffs rest their view that unanimity should be required, upon the fact that in other custodianship cases the orders appointing the custodian authorized the custodian to act whenever the board failed to reach a unanimous decision on any issue. But the statute does not require that result, and plaintiffs offer no other argument or reason why unanimity should be the order of the day in this case. Indeed, the governance scheme plaintiffs advocate could be dysfunctional. If, for example, three of the four directors vote to declare a dividend, the custodian would nonetheless be authorized to overrule that decision. At best, a dissenting director would be incentivized to appeal to the custodian on every issue, and at worst, the custodian and only one other director could unite and exercise the same "negative control" over the corporation that justifies the custodian being appointed in the first place. Such behavior, which would be out of keeping with the purposes of § 226, should not be encouraged.

fendants, but also options that may be proposed by plaintiffs or the non-voting stockholders. Most importantly, the custodian should be free to explore whatever other courses of action the custodian or the custodian's professional advisors may deem appropriate. To limit the flexibility of the custodian to explore all available options would be premature and could truncate the parties' ability to explore additional solutions that may lead to an agreed resolution of their differences. Thus, plaintiffs conclude that the custodian should be given the authority and mandate to investigate potential solutions to resolve the deadlock among the stockholders; to recommend such solutions to the stockholders; and in the event no proposal is acceptable to all of the stockholders, to recommend liquidation of the Company to the Court.

On this important issue the plaintiffs, in my view, have the better position. On the present record, there is no factual or legal basis for the Court to determine which, if any, of the defendants' proposals for resolving the deadlock would serve the best interests of all the stockholders (including the non-voting stockholders) of Cumberland Farms. At this point, no side presently has the benefit of the information and expert advice needed to enable them to make such a determination, or even to comment specifically upon the merits of the other side's proposals, because the deadlock has (the Court is told) prevented the Company from retaining financial advisors to investigate these matters. Given the practical limitations on the ability of the Court to make such judgments directly, and given the limited record developed thus far, it is more appropriate to empower the custodian to explore any and all alternatives that might result in a mutually agreed solution to the current shareholder deadlock.

### III. CONCLUSION

For the foregoing reasons, the plaintiffs' motion for summary judgment shall be granted and the defendants' motion to dismiss the amended complaint shall be denied. Counsel shall confer and submit an appropriate form of Order providing for the appointment of a custodian and implementing the rulings contained in this Opinion. Should the parties be unable to agree upon a form of Order, the Court will be available to resolve the parties' differences.