**SUPERIOR COURT**
**OF THE**
**STATE OF DELAWARE**

ABIGAIL M. LEGROW
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
TELEPHONE (302) 255-0669

April 15, 2020

Oliver J. Cleary, Esquire
Department of Justice
820 French Street
6th Floor
Wilmington, DE 19801

Brian T. Jordan, Esquire
Jordan Law LLC
704 N. King Street St.
Suite 600
Wilmington, DE 19801

RE: *State v. Da Zhong Wang*
**C.A. No. N16C-05-138 AML**

Dear Counsel,

On October 31, 2019, I issued a memorandum opinion (the "Memorandum Opinion") finding the defendant, Da Zhong Wang, civilly liable for three violations of the Delaware Organized Crime and Racketeering Act (the "RICO Statute").[1] As the parties previously had agreed, the issue of remedies was bifurcated from liability. Accordingly, after I issued the Memorandum Opinion, the parties submitted additional briefs addressing (1) the amount of civil penalties the Court should award under the RICO Statute, and (2) whether the RICO Statute permits the State to seek its attorneys' fees incurred in the litigation. For the reasons that follow, I conclude a civil penalty of $120,000 appropriately meets the goals of punishing and deterring

---

[1] *State v. Wang*, 2019 WL 5682801, at *1 (Del. Super. Oct. 31, 2019).

the conduct at issue. I also conclude the RICO Statute does not authorize the State to seek attorneys' fees, but I award the State the portion of its fees that previously were shifted for the time associated with pursuing a motion to compel discovery.

## FACTUAL BACKGROUND

The Court's factual findings after trial are contained in the Memorandum Opinion and will not be repeated at length here. To briefly summarize, the State alleged Wang engaged in a pattern of racketeering activity by operating several massage parlors that were, in essence, a front for a prostitution ring. The Court found that for a period of at least 13 months, Wang's employees regularly engaged in prostitution while giving massages to clients, and Wang knew of and profited from that activity. The Court concluded that Wang, through a pattern of racketeering activity, (1) conducted his enterprise's affairs; (2) maintained control of his business and the associated real and personal property, and (3) used proceeds from the racketeering activity to operate the enterprise.[2]

## ANALYSIS

There now are two issues pending before the Court. First, the parties disagree about the appropriate civil penalty the Court should assess for each violation of the RICO Statute. Second, Wang contends the State is not entitled to an attorneys' fees award under the statute.

---

[2] *Id*. at *10.

### A. Wang must pay $40,000 for each violation of the RICO Statute

The RICO Statute authorizes the State to institute a civil proceeding for racketeering and to seek damages, civil forfeiture, and "a civil penalty of up to $100,000 for each incident of activity constituting a violation of" the statute.[3] The State argues civil penalties substantively are equivalent to punitive damages and serve both a punitive and deterrent effect. The State contends the Court should impose the maximum penalty based on the severity of Wang's underlying conduct and the Court's conclusion that he lied under oath at trial. Wang, on the other hand, argues the maximum penalty would be disproportional to his conduct, which he characterizes as among "the least culpable of predicate acts eligible for a RICO case."[4] Wang suggests a proportional penalty would range from $8,683 to $25,000 and argues anything in excess of that number would be unconstitutional under the Excessive Fines Clauses of the United States and Delaware constitutions.[5]

There is little legislative history or Delaware case law delineating the factors the Court should consider in assessing a civil penalty under the RICO Statute.[6] The best guidance comes from the statute itself, which explains that the statute's purpose "is to guard against and prevent infiltration and illegal acquisition of legitimate

---

[3] 11 *Del. C.* § 1505(b).

[4] Wang's Resp. to the State's Br. for Civil Penalties and Att'ys' Fees (hereinafter "Resp.") ¶ 8.

[5] *Id*. at ¶¶ 7-11. *See* U.S. Const. amend. VIII; Del. Const. art. I, § 11.

[6] The parties have not pointed to any relevant federal case law that might be helpful to the Court's analysis, and the Court's own research has not revealed any such case law other than the *Genty* and *Turkette* cases cited herein.

economic enterprises by racketeering practices, and the use and exploitation of both legal and illegal enterprises to further criminal activities."[7]   The United States Supreme Court has noted that the federal RICO statute's civil remedies are intended to "help eradicate 'organized crime from the social fabric' by divesting 'the association of the fruits of ill-gotten gains.'"[8]   And, civil penalties, like punitive damage awards, serve a dual purpose: punishing wrongdoers for outrageous conduct and deterring the wrongdoer and the public from engaging in similar conduct in the future.[9]   Therefore, in the absence of other factors, the Court will impose a civil penalty that satisfies those purposes of punishing and deterring conduct and divesting ill-gotten gains.

In order to satisfy the punitive purpose of the penalty, the Court must consider the nature and scope of Wang's conduct.[10]   The Court found that Wang's regular

---

[7] 11 *Del. C.* § 1501.

[8] *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 910 (3d Cir. 1991) (quoting *U.S. v. Turkette*, 452 U.S. 576, 585 (1981)).

[9] *Wilhelm v. Ryan*, 903 A.2d 745, 751-52 (Del. 2006); *see also Garvin v. Booth*, 2019 WL 3017419, at *6 n.25 (Del. Super. July 10, 2019) ("[c]ivil penalties are in essence statutorily provided punitive damages").

[10] Wang argues the civil penalty under the RICO statute is a fine for purposes of the Excessive Fines Clauses in the United States and Delaware constitutions.  The Excessive Fines Clauses "limits the government's power to extract payments, whether in cash or in kind, as punishment for some offense." *Timbs v. Indiana*, 139 S. Ct. 682, 687 (2019) (quoting *U.S. v. Bajakajian*, 524 U.S. 321, 327-28 (1998)) (internal quotations omitted).  Neither the United States Supreme Court nor the Delaware Supreme Court has addressed whether the clauses apply to civil cases.  *See Browning-Ferris Indus. of Vermont v. Kelco Disposal, Inc.*, 492 U.S. 257, 274-76 (1989).  Having considered the issue, I do not believe the Court needs to rule on the application of the clauses to civil cases generally in order to resolve the narrow issues in this case.  Even if the clauses apply, the Court avoids running afoul of the constitutional limitation by imposing a penalty that is proportional to the gravity of the offense.  *Bajakajian*, 524 U.S. at 334-35.  For the reasons explained herein, the Court concludes the penalty imposed is proportional to the gravity of Wang's conduct.

way of conducting his massage parlors' business was by training his employees to offer sex or sexual acts during the massage in exchange for compensation. Although the State identified three incidents in which Wang's employees solicited undercover police officers, the Court is not naïve enough to think those were three isolated incidents. To the contrary, the large amounts of cash, used and unused condoms, advertisements for the businesses, and similarity of the solicitations all indicate this was a frequent occurrence at all Wang's businesses.[11] At least some of Wang's employees lived in the businesses in poor conditions. Although the State did not attempt to prove Wang was engaged in human trafficking, the evidence certainly was suggestive of that. Moreover, the Court found Wang was not truthful in even the most basic aspects of his testimony.[12] In short, notwithstanding Wang's post-trial efforts to minimize the gravity of his conduct, the Court finds Wang engaged in the type of pervasive criminal activity the RICO Statute intended to target and eradicate.

Wang did not keep reliable financial records for his businesses, and the prostitution necessarily was conducted as a cash operation, so the Court lacks a clear figure on which it could rely as a penalty that would disgorge Wang's unlawful gains. Given the amount of cash found at the locations on the three days the search warrants were executed, however, the Court feels confident that Wang's pattern of

---

[11] *Wang*, 2019 WL 5682801, at *9-10.
[12] *Id*. at *2-3.

racketeering activity was lucrative to him, and the fine imposed will disgorge at least some of those illegal profits.[13]

As to the goal of imposing a penalty that will deter both the defendant and society at large from similar future conduct, the Court considers the range of possible penalties and what amount would have a potential chilling effect for a business owner positioned to engage in activity similar to Wang's. The RICO Statute allows the Court to impose up to $100,000 per violation. In comparison, if Wang criminally was convicted of violating the statute, he would be guilty of a Class B felony and would face 2-25 years in prison and a fine of *at least* $25,000.[14] The Court must find an appropriate balance between (i) imposing a penalty that is too low, and therefore would not deter Wang or anyone else from the risk of engaging in similar conduct, and (ii) imposing a penalty that is too high for Wang to pay.

Having considered the nature of Wang's conduct and its overall effect on society, as well as the minimum mandatory fine that would be imposed for a criminal conviction, I conclude a fine of $40,000 per offense appropriately punishes Wang, disgorges at least a portion of the profits associated with the racketeering, and serves to deter future conduct. Accordingly, Wang shall pay a $120,000 civil penalty.

---

[13] In total, the police found more than $5,000 in cash when the warrants were executed.

[14] 11 *Del. C.* § 1504(a) ("Any person convicted of conduct constituting a violation of any of the provisions of this chapter **shall** . . . pay a fine **of not less than** $25,000."). Although Wang suggests this $25,000 is the ceiling to any criminal fine, the statute indicates it is the minimum that must be imposed. Unlike misdemeanor offenses, the Delaware Code imposes no ceiling on criminal fines that may be imposed for felonies other than the constitutional limitations previously discussed. *Compare* 11 *Del. C.* § 4205 *with* 11 *Del. C.* § 4206.

**B. The State is not entitled to a fee-shifting award under the RICO Statute.**

The State also argues Wang should be ordered to reimburse the State for the attorneys' fees incurred in this litigation. Delaware follows the American Rule, which provides that parties must pay their own attorneys' fees and costs regardless of the outcome of the litigation absent express statutory language to the contrary.[15] Here, the State argues that fee shifting is authorized by the RICO Statute.

The civil remedies section of the RICO Statute authorizes the State to bring civil proceedings for racketeering and to seek damages, forfeiture, and a civil penalty for violations of the statute. Specifically, Section 1505(b) of the statute states:

> The Attorney General may institute proceedings under § 1503 of this title and in addition for damages, civil forfeiture and a civil penalty of up to $100,000 for each incident of activity constituting a violation of this chapter. In any action brought by the State under § 1503 of this title, the Court shall proceed as soon as practicable to hold a hearing and reach a final determination in the matter. Pending final determination thereof, the Court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of any satisfactory performance bond, as it shall deem proper.

The RICO Statute also contains a distinct provision authorizing a private right of action for persons directly or indirectly injured by racketeering activity. Section 1505(c) provides:

> Any person directly or indirectly injured by reason of any conduct constituting a violation of this chapter may sue therefor in any appropriate court, and if successful shall recover 3 times the actual

---

[15] *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 545 (Del. 1998); *see ATP Tour, Inc. v. Deutscher Tennis Bund*, 91 A.3d 554, 558 (Del. 2014).

damages sustained and, when appropriate, punitive damages. Damages under this subsection are not limited to competitive or distinct injury. ***Plaintiffs who substantially prevail shall also recover attorneys' fees in the trial and appellate courts, together with the costs of investigation and litigation, reasonably incurred***; provided, however, no action may be had under § 1503 of this title except against a defendant who has been criminally convicted of a racketeering activity which was the source of the injury alleged, and no action may be brought under this provision except within 1 year of such conviction.

Although the State acknowledges, as it must, that Section 1505(b) creates the State's authority to bring a civil claim under the RICO Statute, the State nonetheless argues it should be "construed as a Plaintiff [under Section 1505(c) who is] entitled to [attorneys'] fees" because that construction would "harmonize the 'civil RICO' sections of the statute with the 'criminal RICO' sections."[16] The State effectively argues the private right of action under Section 1505(c) applies to both the State and private individuals, without reconciling that argument with Section 1505(b)'s separate existence.

Delaware courts follow settled principles of statutory interpretation, which require giving effect to the plain language of an unambiguous statute.[17] When a statute is clear and unambiguous, statutory interpretation is not needed as courts "have no authority to vary the terms . . . or ignore mandatory provisions."[18] A statute only is considered ambiguous if "it is reasonably susceptible to different

---

[16] State's Br. in Supp. of Civil Penalties and Att'ys' Fees (hereinafter "State's Br.") 6.
[17] *Ovens v. Danberg*, 149 A.3d 1021, 1024 (Del. 2016).
[18] *Board of Adjustment of Sussex County v. Verleysen*, 36 A.3d 326, 331 (Del. 2012) (quotations and citations omitted).

interpretations, or if giving a literal interpretation to the words of the statute would lead to an unreasonable or absurd result that could not have been intended by the legislature."[19]

The State's argument does not withstand even a basic reading of Section 1505 and its place within the larger RICO Statute. Section 1505(b) unambiguously establishes the parameters of the State's civil right of action and the remedies available to it. Section 1505(c), in contrast, establishes the rights and remedies available to a private individual and contains distinct restrictions on that private right of action that do not apply to the State. Notably, in order for a private individual to maintain a cause of action under the RICO Statute, the defendant first must be convicted criminally of racketeering *and* the private right of action only may be brought within a year of that criminal conviction.[20] Although the State plainly does not believe those restrictions apply it, it does not explain why it should get to cherry-pick certain aspects of Section 1505(c) while avoiding that section's attendant restrictions.

Fee shifting simply is not available to the State under Section 1505(b) as it presently is written. If the General Assembly intended to create that additional remedy, they were aware of the language necessary to do so, since they employed it

---

[19] *Evans v. State*, 212 A.3d 308, 314 (Del. Super. 2019) (quoting *Arnold v. State*, 49 A.3d 1180, 1183 (Del. 2012)) (internal quotations omitted).
[20] 11 *Del. C.* § 1505(c).

in Section 1505(c).[21] It is not this Court's function to create by judicial fiat statutory remedies the General Assembly has not seen fit to establish.[22]

The State did, however, prevail in a motion to compel during discovery in this case, and the Court awarded the State its fees incurred in connection with that motion. The State's affidavit attached to its brief avers that ten hours of attorney time were incurred in connection with the motion to compel and associated discovery efforts. Wang's response did not dispute or otherwise address this amount. Accordingly, the Court awards the State attorneys' fees in the amount of $6,000.[23]

## **CONCLUSION**

For the foregoing reasons, the Court awards the State $126,000 in this matter. IT IS SO ORDERED.

Sincerely,

*/s/ Abigail M. LeGrow*
Abigail M. LeGrow, Judge

---

[21] *See Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982) ("[W]here a provision is expressly included in one section of a statute, but is omitted from another, it is reasonable to assume that the Legislature was aware of the omission and intended it.").

[22] *See id.* ("The courts may not engraft upon a statute language which has been clearly excluded therefrom by the Legislature.").

[23] *See* State's Br., Aff. of Oliver Cleary, Esq. ¶¶ 31, 46.