# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
         )
     v.         )    ID No. 0603012717
         )
DARREN R. RIDDOCK,      )
         )
     Defendant.      )
         )

Date Submitted:   September 26, 2022
Date Decided:   December 19, 2022

*Upon Consideration of:*

*Defendant's Motion to Withdraw Guilty Plea –* **DENIED**
*Defendant's Motion for Postconviction Relief –* **DENIED**
*Defendant's Motion for Reduction of Sentence –* **DENIED**
*Defendant's Motion for Appointment of Counsel –* **DENIED**
*Defendant's Motion for Expansion of the Record –* **DENIED**
*Defendant's Motion for Evidentiary Hearing –* **DENIED**

## MEMORANDUM OPINION

John W. Downs, Deputy Attorney General, Department of Justice, Wilmington, Delaware. Attorney for the State of Delaware.

Darren R. Riddock, James T. Vaughn Correctional Center, Smyrna, Delaware, *pro se*.

**JURDEN, P.J.**

Before the Court is Defendant Darren Riddock's "Motion to Withdraw Guilty Plea or in the Alternative Motion for Postconviction Relief or in the Alternative Motion for Reduction of Sentence," "Motion for Appointment of Counsel," "Motion to Expand Record," and "Motion for Evidentiary Hearing." For the reasons set forth in this Memorandum Opinion, Defendant's motions are denied in their entirety and for all relief requested.

## I.    BACKGROUND

In connection with the shooting death of Jermaine Kelson ("Kelson"), Darren Riddock ("Defendant") was indicted on May 15, 2006, for Murder First Degree, Possession of a Firearm During the Commission of a Felony ("PFDCF"), and Possession of a Deadly Weapon by a Person Prohibited ("PDWPP").[1]

### A.    The Guilty Plea

On April 26, 2007, pursuant to a plea agreement with the State, Defendant pled guilty to Manslaughter, a lesser included offense of Murder in the First Degree[2] and PFDCF, and the State agreed to drop the remaining gun charge.[3] At that time, the Court engaged Defendant in a thorough plea colloquy. Defendant represented to the Court that he understood that by entering his plea, he was waiving his right to

---

[1] Grand Jury Indict., D.I. 2.
[2] Def.'s Plea Agreement, D.I. 18.
[3] *Id.*

a trial,[4] to challenge the State's case against him,[5] to question witnesses, and to present evidence in his defense.[6] He acknowledged that he was waiving all available defenses and said he was satisfied with his attorney's representation.[7] Defendant admitted he committed and was guilty of Manslaughter and PFDCF.[8] Based on the colloquy and the record, the Court found that Defendant entered his plea knowingly, voluntarily, and intelligently.[9]

## B.    The Sentencing Hearing

The Court sentenced Defendant on July 27, 2007.[10] Because the case did not go to trial, the facts were not litigated; thus, the parties are not in agreement as to the events leading to the death of the victim, Kelson.

According to defense counsel, on the night of March 14, 2006, Defendant heard that a group of people planned to confront him following an incident that occurred a day earlier.[11] This led to a confrontation and a fistfight, where Kelson

---

[4] Plea Colloquy Tr. 8:9-13, D.I. 69. The Court notes that the plea transcript was docketed twice, first as D.I. 69 and again as D.I. 71. For consistency and conciseness, the Court will only cite it as D.I. 69.

[5] *Id.* at 9:2-7.

[6] *Id.* at 9:12-15.

[7] *Id.* at 11:13-17, D.I. 69. The Court asked, "Are you satisfied with your lawyer's representation of you and that they have fully advised you of your rights and of your guilty plea?" In response, Defendant stated, "[y]es, ma'am." *Id.*

[8] *Id.* at 6:1-19.

[9] *See id.* at 12:3-5; *see generally* Def.'s Plea Agreement, D.I. 18. Defendant does not now, nor has he ever, disputed the validity of his plea.

[10] Sentence Order, D.I. 31; Corrected Sentence Order, D.I. 32.

[11] *See* Sent'g Tr. 12-14, 15:1-17, D.I. 70. The Court notes that the sentencing transcript was docketed twice, first as D.I. 70 and again as D.I. 72. For consistency and conciseness, the Court will only cite it as D.I. 70.

allegedly approached Defendant and punched him in the face.[12]  Defendant claims that the two then began fighting.[13]  Defendant alleges that he heard another individual yelling for Kelson to shoot him[14] and believed that Kelson had a firearm.[15]  At some point during the fight, Defendant claims he wrestled a gun away from Kelson and shot him several times in self-defense.[16]

At sentencing, Defense counsel stated that the facts in the case were "hotly contested,"[17] and, had the case gone to trial, Defendant would have vigorously fought the charges on the basis that he acted in self-defense.[18]  Defense counsel posited that the case would have resulted in an all-or-nothing verdict: a life sentence or an acquittal.[19]  He suggested that the parties "struck a middle ground" through the plea agreement, providing Defendant with "a better brand of justice in this matter."[20]

The State strongly disputed Defendant's version of the events.  The State told the Court that Defendant's version of the events was wholly inconsistent with the evidence that would have been introduced had the case proceeded to trial.[21]  The State represented that it would have been "quite clear" from the evidence that Defendant

---

[12] *See* Sent'g Tr. 15:18-19, 17:16-19, D.I. 70.
[13] *Id.* at 17:18.
[14] *Id.* at 17:20-23 – 18:1-3.
[15] *Id.* at 18:16-17.
[16] *Id.* at 18:18-20.
[17] *Id.* at 14:21.
[18] Sent'g Tr. 18:13-15, D.I. 70.
[19] *Id.* at 19:20-22 – 20:2-3.
[20] *Id.* at 20:7-8.
[21] *See generally id.* at 12-34.

4

and those with him brought the weapons to the fight, not the other way around.[22]

There was no evidence to suggest that Kelson owned a gun, carried a gun, used a gun, or was familiar with guns.[23]  In addition, the State would have highlighted the indisputable fact that Defendant showed police where he buried the gun,[24] Defendant's confession,[25] and his admission to "empty[ing] the clip" when he shot Kelson.[26]  The State also would have called the medical examiner as an expert witness to testify as to Kelson's cause of death – three gunshot wounds to the chest and back.[27]

The Court sentenced Defendant, effective August 10, 2006, as follows: as to Manslaughter, 25 years at Level V, suspended after 16 years, followed by decreasing levels of supervision;[28] and as to PFDCF, 4 years at Level V.[29]  The Court stated that delivering "a lesser sentence would unduly depreciate the loss of life here."[30]  In determining the appropriate sentence, the Court considered the following aggravating factors: the victim was shot multiple times; Defendant was found in possession of cocaine and another weapon at the time of his arrest;[31] Defendant's

---

[22] *Id.* at 32:13-16.
[23] *Id.* at 30:10-13.
[24] *See, e.g.*, State's Resp. to Def.'s Mot. 7, D.I. 67; State's Resp. to Def.'s Mot., Ex. A, D.I. 67; State's Resp. to Def.'s Suppl. Mem. 1, D.I. 81.
[25] State's Resp. to Def.'s Mot. 7, D.I. 67.
[26] Sent'g Tr. 31:15-19, D.I. 70.
[27] DOJ Letter, D.I. 10l; Sent'g Tr. 28:1-7, D.I. 70.
[28] Defendant's sentence also requires him to pay restitution in the amount of $8,350 to the Violent Crimes Compensation Board.  Sentence Order, *supra* note 10.
[29] *Id.*
[30] Sent'g Tr. 39:1-2, D.I. 70.
[31] Sentence Order, *supra* note 10.

prior criminal history, which included convictions for menacing and terroristic threatening; and his prior violations of probation.[32] The Court considered the following mitigating factors: Defendant's familial support; his expressions of remorse; and, to the extent the victim punched Defendant, there was an "element of victim involvement" in the altercation.[33]

## C.  Defendant's Post-Sentencing Motions

Defendant filed a Motion for Reduction of Sentence on October 26, 2007,[34] which the Court denied on February 4, 2008.[35] Since that first motion, Defendant has filed several letters[36] and two subsequent motions for sentence modification under Rule 35(b).[37] The Court denied both motions as procedurally barred because they were untimely and repetitive[38] and noted that they failed to raise any new bases for challenging the Court's reasoning at the time of sentencing.[39]

On April 14, 2021, Defendant filed the instant motions seeking relief on several grounds.[40] Defendant raises his core arguments in his "Motion to Withdraw

---

[32] *Id.*
[33] Sent'g Tr. 39:6-8, D.I. 70.
[34] Def.'s First Rule 35(b) Mot., D.I. 33.
[35] Order Den. Def.'s First Rule 35(b) Mot., D.I. 34.
[36] *See e.g.*, Letters from Def., D.I. 37-38, D.I. 40-42.  The content of Defendant's letters addressed his progress in prison and his remorse for his actions.
[37] Def.'s Second Rule 35(b) Mot., D.I. 36; Def.'s Third Rule 35(b) Mot., D.I. 44.
[38] Order Den. Def.'s Second Rule 35(b) Mot., D.I. 39; Order Den. Def.'s Third Rule 35(b) Mot., D.I. 45.
[39] Orders, *supra* note 38.
[40] Def.'s Mot. to Withdraw Guilty Plea or in the Alternative Mot. for Postconviction Relief or in the Alternative Mot. for Reduction of Sent., D.I. 47 [hereinafter Def.'s Omnibus Mot.]; Def.'s

6

Guilty Plea or in the Alternative Motion for Postconviction Relief or in the Alternative Motion for Reduction of Sentence" ("Omnibus Motion").[41]

In his Omnibus Motion, Defendant alleges that there is new evidence, in the form of a previously unidentified witness, which supports his self-defense claim and suggests that he was not "the cause of the victim's death."[42]  Defendant asserts that the "ostensible remedy"[43] would be for the Court to allow him to "withdraw [his] guilty plea with commensurate postconviction relief."[44]   In the alternative, Defendant proffers what he describes as an "equitable solution," under which the Court would agree to modify his sentence pursuant to Rule 35(b).[45]

In Defendant's supplemental memorandum,[46] submitted in response to the Court's request for additional briefing,[47] Defendant claims, for the first time, that his Omnibus Motion and other accompanying motions imply a claim of ineffective

---

Mot. Expand R., D.I. 48; Def.'s Mot. Appt. Couns., D.I. 49; Def.'s Mot. Evid. Hr'g, D.I. 50; Def.'s Ex. Vol. 1 & Def.'s Ex. Vol. 2, D.I. 50.

[41] Def.'s Omnibus Mot., D.I. 47.

[42] *Id.*

[43] *Id.* ¶ 9, D.I. 47.

[44] *See generally id.*

[45] *See generally id.*

[46] Def.'s Suppl. Mem. at 1, D.I. 79.

[47] By order dated, July 14, 2022, the Court ordered supplemental briefing from the parties addressing the following questions:
  1. How should the pleading standard of Rule 61(d)(2)(i) be applied when one seeks a vacatur of his guilty plea based on a claim of new evidence of factual innocence, in the absence of a claim of ineffective assistance of counsel?
  2. What is the actual standard for vacatur of a guilty plea under Rule 61, versus Rule 32(d), in the absence of a claim of ineffective assistance of counsel?  Suppl. Briefing Letter Order, D.I. 73

assistance of counsel ("IAC").[48] Defendant claims he intended to defend his case at trial under a theory of self-defense,[49] but due to the ineffectiveness of counsel, he was "forced to accept the plea" because his attorney was unable to find "corroborating witness[es]."[50]

## II. DISCUSSION

### A. Defendant's Omnibus Motion[51]

#### 1. Defendant's Motion to Withdraw His Guilty Plea Is Improper Under Superior Court Criminal Rule 32(d).

Rule 32(d) provides that, on motion for withdrawal of a plea that is made *prior* to the imposition of a sentence, the Court "may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason."[52]  When, however, a defendant moves to withdraw his guilty plea *after* sentencing, it is deemed a collateral attack on the conviction, meaning that the " plea may be set aside only by motion under Rule 61."[53]  Defendant pled guilty to Manslaughter and PFDCF on April 26, 2007,[54] and was sentenced on July 27, 2007.[55]  Pursuant to Rule 32(d), Defendant became ineligible to withdraw his plea after he was sentenced.  Therefore,

---

[48] Def.'s Suppl. Mem. at 1, D.I. 79.
[49] Def.'s Omnibus Mot. ¶ 1, D.I. 47.
[50] *Id.* ¶ 4.
[51] Def.'s Omnibus Mot. ¶ 1, D.I. 47.
[52] *Id.*; Super. Ct. Crim. R. 32(d).
[53] Super. Ct. Crim. R. 32(d); *see Patterson v. State*, 684 A.2d 1234, 1237 (Del. 1996).
[54] Def.'s Plea Agreement, D.I. 18.
[55] Sentence Order, *supra* note 10.

Rule 61 is the only proper avenue for his request.[56] Accordingly, the Court will address Defendant's motion to withdraw his guilty plea as a motion for postconviction relief pursuant to Superior Court Criminal Rule 61.

2.      <u>Defendant Is Not Entitled to Postconviction Relief Under Rule 61.</u>

Rule 61 "balance[s]" the law's interest in conviction finality "against . . . the important role of the courts in preventing injustice."[57] While the availability of collateral review reintroduces uncertainty into completed criminal proceedings, the possibility of undetected innocence or a comparable miscarriage of justice overrides its disruptive effects.[58] To deter abusive collateral litigation, the standards and presumptions existing under post-conviction rules purposefully have made "winning [collateral] relief difficult[.]"[59] Even more so, "the bases for *ex post* guilty plea challenges are extremely narrow."[60]

Rule 61 is intended to correct errors in the trial process, "not to allow defendants unlimited opportunities to relitigate their convictions."[61] A defendant seeking to invalidate a conviction based on a guilty plea must contend with a

---

[56] Super. Ct. Crim. R. 32(d).

[57] *Zebroski v. State*, 12 A.3d 1115, 1120 (Del. 2010).

[58] *Schlup v. Delo*, 513 U.S. 298, 321 (1995). *Accord Purnell v. State*, 254 A.3d 1053, 1122-23 (Del. 2021).

[59] *Brown v. Davenport*, 142 S. Ct. 1510, 1526 (2022).

[60] *State v. Brooks*, 2022 WL 2229780, at *4 (Del. Super. June 21, 2022) (quoting *Jackson v. State*, 654 A.2d 829, 832 n.2 (Del. 1995)) (internal quotations omitted).

[61] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).

"presumption of regularity."[62]  "The presumption of regularity attaches to all final judgments . . . and implies those judgments have been done rightly until contrary evidence appears."[63]  Accordingly, Rule 61 shifts the burden of demonstrating that one's plea is not supported by a "sufficient factual and legal basis" to the defendant.[64]

### a.    Defendant's Rule 61 motion is procedurally barred.

Before considering the substantive merits of any claim for postconviction relief, the Court must first determine whether the movant has met the procedural requirements of Rule 61.[65]  The Court will not consider the merits of a defendant's postconviction claim if it is procedurally barred.[66]  A motion under Rule 61 is barred if it is untimely, repetitive, procedurally defaulted, or formerly adjudicated.[67]

A Rule 61 motion for postconviction relief "may not be filed more than one year after the judgment of conviction is final . . . ."[68]  When a defendant does not file a direct appeal with the Supreme Court, "[a] judgment of conviction is final . . . 30 days after the Superior Court imposes sentence."[69]  Here, the Court imposed its

---

[62] *Xenidis v. State*, 2020 WL 1274624, at *2 (Del. Mar. 17, 2020) (TABLE).

[63] *Id.*

[64] Super. Ct. Crim. R. 61(a)(1).  *See, e.g.*, *Dorsey v. State*, 2007 WL 4965637, at *1-2 (Del. Nov. 6, 2007).

[65] Super. Ct. Crim. R. 61(i).

[66] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[67] Super. Ct. Crim. R. 61(i)(1-4).

[68] Super. Ct. Crim. R. 61(i)(1).  Where, as here, a defendant does not file a direct appeal with the Supreme Court, "[a] judgment of conviction is final . . . 30 days after the Superior Court imposes sentence." *Id.*

[69] Super. Ct. Crim. R. 61(m).

sentence on July 27, 2007,[70] and it became final thirty days later, on August 27, 2007.[71] Defendant filed the instant motion nearly fourteen years later, on April 14, 2021.[72] Defendant's motion seeking postconviction relief is therefore procedurally barred as untimely. Consequently, the Court will not consider Defendant's claims on the merits.[73]

> **b.** *Defendant's postconviction claim is not excepted under Rule 61(i)(5) and Rule 61(d)(2)(i).*

Notwithstanding the fact that his motion is procedurally barred, Defendant asks the Court to consider the merits of his motion under the "actual innocence" exception to Rule 61.[74] Under this exception, a movant whose motion for postconviction relief is otherwise barred may nevertheless be afforded relief where the "[C]ourt lacked jurisdiction or to a claim that satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d)."[75] The text of which states:

> (2) . . . A second or subsequent motion under this rule shall be summarily dismissed, unless the movant was convicted after a trial and the motion either:
>
> > (i) pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted; or

---

[70] Sentence Order, *supra* note 10.
[71] Super. Ct. Crim. R. 61(m).
[72] Def.'s Omnibus Mot., D.I. 47.
[73] *State v. Broomer*, 2022 WL 1570208, at *1 (Del. Super. Oct. 27, 2022) (citing *Younger*, 580 A.2d at 554).
[74] As previously stated, the only procedural bar at issue here is timeliness.
[75] Super. Ct. Crim. R. 61(i)(5).

(ii) pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid.[76]

Under the "actual innocence" exception to Rule 61, "[i]nnocence of the acts underlying the charges requires more than innocence of intent; it requires new evidence that a person other than the petitioner committed the crime."[77] This requires the Court to evaluate whether the proffered evidence is both new and persuasive.[78]

i.        Defendant's evidence is not new.

Evidence is "new" if it was discovered after trial and could not have been discovered before trial with due diligence.[79] In *State v. Madison*, the defendant filed a postconviction motion claiming actual innocence.[80] In support of that claim, he presented DNA evidence collected pre-trial but tested two years post-trial.[81] The Court found that the defendant's evidence was not new, stating, "[s]imply because [the defendant] now has DNA test results . . . doesn't make it 'new.' . . . [T]he

---

[76] Super. Ct. Crim. R. 61(d)(2) (emphasis added).
[77] *Purnell*, 254 A.3d at 1095 (internal quotations omitted).
[78] *Id.*
[79] *Lloyd v. State*, 534 A.2d 1262, 1267 (Del. 1987). *Accord Purnell*, 254 A.3d at 1097.
[80] *State v. Madison*, 2022 WL 3011377, at *4 (Del. Super. July 29, 2022).
[81] *Id.*

12

possibility of testing for trace DNA was available pre-trial and his trial counsel made the tactical decision to forgo such testing."[82]

Here, Defendant asks the Court to consider a statement given in April 2020 ("2020 Statement") by a witness named Gerald Winder ("Winder").[83] Defendant claims that this evidence is "new" because *he* first learned of Winder in early 2020,[84] and Winder's 2020 Statement was "discovered *after* the police interviews."[85] However, Winder was a known witness at the time of the offense in 2006. Police interviewed him twice shortly after Kelson's death in March 2006, and he gave two statements ("First 2006 Statement" and "Second 2006 Statement").[86] During discovery, the State provided those statements to defense counsel,[87] and defense files indicate that an investigator from the Office of Defense Services interviewed Winder in preparation for trial.[88] Like the DNA evidence in *Madison*, Winder was available prior to Defendant's plea – his existence was known when Defendant accepted the plea bargain and pled guilty.[89] What Defendant asks the Court to consider is not

---

[82] *Id.*
[83] Def.'s Omnibus Mot. ¶ 7-9, D.I. 47. Defendant also refers to several other pieces of 'new' evidence but does not make any argument that they support his actual innocence claim. *Id.* ¶ 10. Defendant presents a report by S&H Investigative Services, a 2020 hand-drawn diagram of the crime scene, a synopsis of a statement by Jermaine Wright, and "investigative" emails. *Id.*
[84] *Id.* ¶ 5.
[85] Def.'s Reply to State's Resp. ¶ 8, D.I. 68.
[86] Def.'s Exs. Vol. II, at 43, 58, D.I. 50; State's Resp. to Def.'s Mot. ¶ 15 & Ex. A, D.I. 67.
[87] DOJ Letter to ODS, D.I. 6; *see also* State's Resp. to Def.'s Suppl. Mem., D.I. 81.
[88] Def.'s Exs. Vol. I, Ex. F, D.I. 50; *see also* State's Resp. to Def.'s Suppl. Mem., D.I. 81; State's Resp. to Def.'s Mot. ¶ 14, D.I. 67.
[89] *See generally supra* note 88.

new evidence but a re-interview of Winder fourteen years later. That is not "new;" it is a retelling of his First and Second 2006 Statements.

> ii.       Defendant's proffered evidence does not raise a strong inference that he is actually innocent.

Assuming *arguendo* the Winder evidence is new, it does not support Defendant's claim of actual innocence. To satisfy the actual innocence exception, the evidence offered "must speak with such persuasive force"[90] as to "create[] a strong inference that [the Defendant] is actually innocent in fact of the acts underlying his convictions."[91]

Defendant asks the Court to consider Winder's 2020 Statement. Without quoting that statement, Defendant argues that Winder's 2020 Statement establishes his innocence because it proves that a second shooter was responsible for killing Kelson.[92] Defendant attempts to use this evidence to support his contention that his "shots from the front were not inherently fatal" and suggests that Winder's 2020 Statement proves the existence of a "second shooter." He further claims that the second individual shot Kelson in the back of the head[93] and is ultimately responsible for the victim's death.[94]

---

[90] *Purnell*, 254 A.3d at 1100.
[91] *State v. Stokes*, 2022 WL 2783813, at *2 (July 14, 2022).
[92] Def.'s Omnibus Mot. ¶ 8, D.I. 47; Def's Reply to State's Resp. ¶ 4, D.I. 68; Def.'s Suppl. Mem. ¶ 4, D.I. 79.
[93] Victim was not shot in the back of the head. DOJ Letter, D.I. 10.
[94] Def.'s Omnibus Mot. ¶ 8, D.I. 47; Def's Reply to State's Resp. ¶ 4, D.I. 68; Def.'s Suppl. Mem. ¶ 4, D.I. 79.

In his 2020 Statement, Winder roughly corroborated the version of events presented by Defendant at sentencing.[95] Winder stated that while Defendant and Kelson were fighting, he heard "like four" shots go off,[96] but he did not see who fired them.[97] Winder said he fled the scene after hearing the sound of gunfire.[98] As he was running, he saw another person with a gun, crouching nearby, yelling, "get him . . . ."[99] Winder stated that he continued running and heard more shots after he fled.[100]

Defendant misunderstands what is required under actual innocence. "Actual innocence means factual innocence, not legal innocence. In other words, [evidence showing that] the State . . . convicted the wrong person."[101] Defendant's claims do not fit this paradigm. At best, Winder's statement confirms what was known in 2006: there was another individual at the scene with a firearm. It does not establish that someone else shot and killed Kelson, nor does it establish Defendant's innocence. Winder could not identify the shooter or the direction from which the victim was shot.

---

[95] *See generally* Def.'s Exs. Vol. I, at Ex. M, D.I. 50 [hereinafter Winder's 2020 Statement]; *see generally* Sent'g Tr., D.I.70.
[96] Winder's 2020 Statement at 13:2-7, D.I. 50.
[97] *Id.* at 13:10.
[98] *Id.* at 13:11-15.
[99] *Id.* at 14:4-7, 15:8-12.
[100] *Id.* at 16:1-3.
[101] *Stokes*, 2022 WL 2783813, at *3 (quoting *Sawyer v. Whitley*, 505 U.S. 33, 340 (1992)) (internal quotes and modifications omitted).

Additionally, Defendant does not dispute that he shot Kelson. On more than one occasion, Defendant admitted to shooting him multiple times in the abdomen.[102] The autopsy report confirms that the cause of the victim's death was three gunshot wounds, two to the abdomen and one to the back.[103] Defendant gave police the firearm he used,[104] and police were able to link it to the shell casings found at the scene.[105]

Defendant's claim of actual innocence is further undermined by the fact that he pled guilty to manslaughter and admitted he caused Kelson's death.[106] He does not claim that his plea was entered involuntarily. To the contrary, Defendant's statements during the plea colloquy, his signature on the plea agreement, and the instant motion reflect that Defendant knowingly, intelligently, and voluntarily admitted he committed the crimes and entered his guilty plea.[107] "In the absence of clear and convincing evidence to the contrary, [Defendant] is bound by his answers . . . and testimony . . . prior to the acceptance of the guilty plea."[108] The defendant

---

[102] Def.'s Omnibus Mot. ¶ 1, D.I. 47; Def's Reply to State's Resp. ¶ 4, D.I. 68; Sent'g Tr. 31:13-19, D.I. 70.

[103] Sent'g Tr. 28:3-7, D.I. 70; DOJ Letter, D.I. 10.

[104] State's Resp. to Def.'s Mot., Ex. A, D.I. 67.

[105] US DOJ Lab. Report, D.I. 9; Sent'g Tr. 31:13-15, D.I. 70

[106] Sent'g Tr. 6:1-12, D.I. 70. *See, e.g.*, *State v. Baltazar*, 2015 WL 868924, at *2 (Del. Super. Feb. 27, 2015) ("It is difficult to envision how Defendant could introduce evidence he is actually innocent of the crime when he admitted to the court that he took money from the victim while suggesting to the victim that he had a gun. Putting aside the theoretical difficulty of showing such evidence under these circumstances, the instant petition falls far short of the mark.")

[107] Def.'s Plea Agreement, D.I. 18.

[108] *Sommerville v. State*, 703 A.2d 629, 632 (Del. 1997).

has not provided any new evidence, nor does that evidence create a strong inference that he is innocent.[109]

### 3. Defendant's Motion for Reduction of Sentence Under Rule 35(b) Is Procedurally Barred.

Defendant asks the Court to consider reducing his sentence pursuant to Superior Court Criminal Rule 35(b) as an alternative to the other relief requested. Rule 35(b) governs motions for modification or reduction of a sentence.[110] "Under Rule 35(b), a motion for sentence modification must be filed within ninety days of sentencing, absent a showing of 'extraordinary circumstances.'"[111] Rule 35(b) also mandates that "[t]he [C]ourt *will not* consider repetitive requests for reduction of sentence."[112] "[T]his bar is absolute and flatly 'prohibits repetitive requests for reduction of sentence.'"[113] The bar to repetitive motions has no exception.[114] Defendant's motion for modification of sentence was filed more than ninety days after sentencing,[115] and it is his *fourth* Rule 35(b) motion.[116] Thus, Defendant's motion

---

[109] *Cf. Purnell*, 254 A.3d at 1095; Super. Ct. Crim. R. 61(d)(2)(i).
[110] Super. Ct. Crim. R. 35(b).
[111] *Croll v. State*, 2020 WL 1909193, at *1 (Del. Apr. 17, 2020) (TABLE) (affirming the Superior Court's denial of a motion for modification of sentence where the motion was repetitive and filed beyond the 90-day limit); *see Hewett v. State*, 2014 WL 5020251, at *1 (Del. Oct. 7, 2014) ("When a motion for reduction of sentence is filed within ninety days of sentencing, the Superior Court has broad discretion to decide whether to alter its judgment.").
[112] Super. Ct. Crim. R. 35(b) (emphasis added).
[113] *State v. Redden*, 111 A.3d 602, 609 (Del. Super. 2015) (quoting *Thomas v. State,* 2002 WL 31681804, at *1 (Del. Nov. 25, 2002).
[114] *Redden,* 111 A.3d at 608-09; *see also State v. Culp*, 152 A.3d 141, 144 (Del. 2016).
[115] The motion was filed on April 14, 2021. Def.'s Omnibus Mot., D.I. 47.
[116] Def.'s First Rule 35(b) Mot., D.I. 33, Feb. 4, 2008; Def.'s Second Rule 35(b) Mot., D.I. 36, June 30, 2008; Def.'s Third Rule 35(b) Mot., D.I. 44, May 20, 2014.

is untimely and repetitive. Defendant argues that the Court should still consider his motion, notwithstanding the procedural default, and claims that he is eligible for relief under exceptional circumstances. That exception, however, does not apply to repetitive motions.[117]

## B. Defendant's Motion for Appointment of Postconviction Counsel[118]

Under Superior Court Rule 61(e), where the movant pled guilty, "[t]he judge may appoint counsel for an indigent movant's first *timely* postconviction motion and request for appointment of counsel"[119] where the Court finds that several conditions are satisfied.[120] As noted above, Defendant's "Motion for Appointment of Counsel" was untimely filed and is, therefore, procedurally barred.[121] Consequently, there is no pending motion for postconviction relief; thus, Defendant's request for appointment of postconviction counsel is moot.[122]

---

[117] Unlike the 90-day jurisdictional limit with its "extraordinary circumstances" exception, the bar to repetitive motions has no exception. *See Redden*, 111 A.3d at 608 (citing *Giuricich v. Emtrol Corp.,* 449 A.2d 232, 238 (Del.1982) ("[W]here a provision is expressly included in one section of a statute, but is omitted from another, it is reasonable to assume that the Legislature was aware of the omission and intended it.")).

[118] Def.'s Mot. Appt. Couns., D.I. 49.

[119] Super. Ct. Crim. R. 61(e)(3).

[120] *Id.* (emphasis added).
> (i) the conviction has been affirmed by final order upon direct appellate review or direct appellate review is unavailable; (ii) the motion sets forth a substantial claim that the movant received ineffective assistance of counsel in relation to the plea of guilty or nolo contendere; (iii) granting the motion would result in vacatur of the judgment of conviction for which the movant is in custody; and (iv) specific exceptional circumstances warrant the appointment of counsel. *Id.*

[121] Def.'s Mot. Appt. Couns., D.I. 49.

[122] *State v. Bezarez*, 2020 WL 7393240, at *2 (Del. Super. Dec. 16, 2020), *aff'd*, 258 A.3d 806 (Del. 2021); Super. Ct. Crim. R. 61(e)(3).

## C.    Rule 61 Expansion of Record[123]

Defendant moves for expansion of the record, seeking leave to incorporate the documents from Volumes I and II of his exhibits.[124]  Rule 61(g)(1) provides that "[t]he judge may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the motion."[125]  Notwithstanding the fact that Defendant's Rule 61 motion is procedurally barred,[126] the Court already exercised its discretion under this rule when it requested that the parties submit supplemental briefing in this case.[127]  Further, Defendant included Volumes I and II when he filed his Omnibus Motion, so the evidence he is seeking to admit already appears in the record.[128]  The Court finds that no additional expansion of the record is needed or warranted.

## D.    Defendant's Motion for Evidentiary Hearing[129]

Defendant asks the Court to hold an evidentiary hearing on this matter.[130]  Under Rule 61(h), the Court may grant an evidentiary hearing when "[a]fter considering the motion for postconviction relief, the State's response, the movant's reply[,] . . . the record of prior proceedings in the case, and any added materials, the

---

[123] Def.'s Mot. Expand R., D.I. 48.
[124] *Id.  See* Def.'s Ex. Vol. 1 & Def.'s Ex. Vol. 2, D.I. 50.
[125] Super. Ct. Crim. R. 61(g)(1).
[126] Super. Ct. Crim. R. 61(i)(1).
[127] *See* Suppl. Briefing Order, *supra* note 47.
[128] Def.'s Ex. Vol. 1 & Def.'s Ex. Vol. 2, D.I. 50.
[129] Def.'s Mot. Evid. Hr'g, D.I. 50
[130] *Id.*

judge [finds that such a] hearing is desirable."[131]  Where an evidentiary hearing is not warranted, the Court may dispose of the motion "as justice dictates."[132]  Rule 61(h) provides the Court broad discretion in deciding "whether an evidentiary hearing is desirable."[133]  Based on a review of the entire record and the disposition of the above motions, the Court finds that an evidentiary hearing will not change the outcome[134] and is neither necessary nor desirable.

## IV. CONCLUSION

For all the reasons stated above, Defendant's Motion to Withdraw Guilty Plea is **DENIED**, Defendant's Motion for Postconviction Relief is **DENIED**, Defendant's Motion for Reduction of Sentence is **DENIED**, Defendant's Motion for Appointment of Counsel is **DENIED AS MOOT**, Defendant's Motion for Expansion of the Record is **DENIED**, and Defendant's Motion for Evidentiary Hearing is **DENIED**.

**IT IS SO ORDERED**.

_____/s/ Jan R. Jurden_____
Jan R. Jurden, President Judge

---

[131] Super. Ct. Crim. R. 61(h)(1).
[132] *Id.*
[133] *Id.*
[134] *State v. Thompson*, 2022 WL 1744242, at *16 (Del. Super. May 31, 2022) (citing *Hawkins v. State*, 2003 WL 22957025, at *1 (Del. Dec. 10, 2003)).